MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellee,

v.

Ivan HOVEY, Richard Kadry, Bruce Markey and Lynn Erickson, Appellants.

Mary WICHMANN, Appellant,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellee.

No. 83–2231.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1983.

Decided Jan. 25, 1984.

son, Kathy M. Silberthau, Cahill, Gordon & Reindel, P.C., New York City, for appellants.

John J. Cole, Edwin L. Noel, Catherine D. Perry, St. Louis, Mo., for appellee; Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, Minn., of counsel.

Before LAY, Chief Judge, FAGG, Circuit Judge, and NICHOL, Senior District Judge.[*]

LAY, Chief Judge.

Merrill Lynch, Pierce, Fenner & Smith, Inc. sought injunctive relief against five former employees to prevent their use of Merrill Lynch's records and their solicitation of Merrill Lynch clients. The employees counterclaimed seeking to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1–4 (1982). The district court granted injunctive relief[1] and refused to submit the dispute to arbitration. The employees have appealed.

As former account executives with Merrill Lynch, Ivan Hovey, Mary Wichmann, Bruce Markey, and Richard Kadry each signed employment agreements.[2] The agreement provides, inter alia, that certain records "shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination of my employment . . . with Merrill Lynch" and prohibits former account executives from removing or retaining copies thereof; and it purports to prohibit these employees from "soliciting" clients of Merrill Lynch for one year after the termination of employment. The employees subsequently resigned from Merrill Lynch and joined E.F. Hutton, a competitor.[3] The em-

Stephen W. Plambeck, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N.D., Jerry Raskas, Raskas, Ruthmeyer, Pomerantz & Wayne, St. Louis, Mo., Thomas F. Curnin, Thomas J. Kavaler, Joel E. David-

---

[*] The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota.

[1] On the employees' motion for stay this court modified the injunctive relief so as to allow the former employees to service the accounts of those clients who had already transferred their accounts to the employees.

[2] Erickson was a secretary, not a stockbroker, and did not sign any agreement with Merrill Lynch.

[3] On July 1, 1983, these employees and Erickson submitted their letters of resignation to Merrill Lynch. Upon persuasion, Wichmann stayed on with Merrill Lynch until July 22, 1983, when she again resigned to join E.F. Hutton. Wichmann filed a law suit against

ployees admit that they have retained some limited information entrusted to them by clients whom they had serviced while at Merrill Lynch. Moreover, the employees admit that they have solicited these customers while at E.F. Hutton. (Appellant's Brief at 4). On appeal, we are not addressing whether this constitutes a breach of the employment agreement nor do we address the validity of the clauses that purport to prohibit this conduct. The issue presented on appeal is whether the dispute is subject to arbitration or whether Merrill Lynch may properly proceed in the federal district court.

## I. *Arbitrability*

■ We initially address three issues: (1) whether there exists a valid agreement to arbitrate; (2) whether the subject matter of this dispute is covered by the agreement; and if so, (3) whether there has been a breach of the agreement.[4] *See Johnson Controls, Inc. v. City of Cedar Rapids, Iowa,* 713 F.2d 370, 373 (8th Cir.1983); *National Railroad Passenger Corp. v. Missouri Pacific Railroad,* 501 F.2d 423, 427 (8th Cir.1974).

Merrill Lynch and Hovey, Markey, and Wichmann are members of the NYSE. As members of the NYSE, they have agreed to comply with the NYSE rules, including the dispute resolution procedures detailed in Rule 347.[5] The employees seek arbitration under the Federal Arbitration Act, 9 U.S.C.

§§ 3, 4 based on NYSE Rule 347. Rule 347 provides:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure described elsewhere in these rules.

It is readily apparent that this rule is binding on its signatories and is part of the employment agreement between the employees and Merrill Lynch. *See Muh v. Newburger, Loeb & Co.,* 540 F.2d 970, 972–73 (9th Cir.1976); *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1211 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). Moreover, we find that Rule 347 constitutes a valid written agreement to arbitrate which is governed by the Federal Arbitration Act.[6] 9 U.S.C. §§ 1–4; *see Coenen,* 453 F.2d at 1211; *Stokes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 523 F.2d 433 (6th Cir.1975).

On the other hand, Kadry and Erickson are not members of the NYSE, nor do their employment contracts contain an arbitration agreement. Kadry and Erickson rely primarily on Article VIII of the NYSE Constitution to support their claim for arbitration. Article VIII allows nonmembers to compel arbitration of any controversy "arising out of the business" of a member.[7]

Merrill Lynch on July 25, 1983, seeking to restrain Merrill Lynch from filing a suit against her for breaches of her employment contract, to compel arbitration before the New York Stock Exchange (NYSE) of any disputes between her and Merrill Lynch, and to stay the action pending the outcome of the arbitration proceeding that she sought. Merrill Lynch filed a counterclaim to Wichmann's complaint and a complaint against the others. Merrill Lynch sought an order enjoining its former employees from any further violations of their employment contracts. The employees cross-moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1–4. The district court determined that the dispute was not arbitrable and granted Merrill Lynch's request for preliminary injunctive relief.

4. *See* 9 U.S.C. § 4 (1982). Section 4 states, in relevant part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed ...."

5. As registered representatives and pursuant to Rule 345.11, Hovey, Markey, and Wichmann also signed the Form U–4, which provides that members agree to be bound by the arbitration provisions of the NYSE Constitution and Rules.

6. Ivan Hovey's claim for arbitration is also based on a similar arbitration provision in his employment contract.

7. "Any controversy between parties who are members, ... member firms ... and any con-

Merrill Lynch contends that the employees' reliance on Article VIII is misplaced. Merrill Lynch urges that Article VIII's reference to "business" reflects that the provision's intention is to allow *customers,* not employees, to compel arbitration. We find, however, that the provision is not so limited. The article of the Constitution reflects the self-regulation of the securities industry, as well as the effort to provide an integrated method of resolving disputes involving the affairs of the NYSE. We find that Article VIII constitutes an agreement to arbitrate, upon which Kadry and Erickson may rely.

In accordance with the Federal Arbitration Act we also find that all of the employees have timely and properly requested arbitration. The remaining issue is whether the arbitration agreement reaches the subject matter of the dispute here.

The various arbitration agreements between the parties employ substantially the same terminology. They state that *"[a]ny controversy . . . arising out of* the employment or *termination of employment . . .* shall be settled by arbitration." NYSE, Rule 347 (emphasis added).

The district court found that the solicitation and record duplication took place *after* the employment relationship between the parties had been terminated. Employing essentially a temporal analysis, the court concluded that the violations, therefore, could not have "aris[en] out of the employment or termination of employment." On appeal, Merrill Lynch reasserts the contention that only those disputes which occurred during the employment relationship are arbitrable. On the other hand, the employees contend that, although the dispute occurred after their termination, it is still within the scope of the arbitration agreement. Upon analysis of the applicability of the Federal Arbitration Act and the Rules and Constitution of the NYSE, along with a plain read-

ing of the arbitration agreement, we find that the dispute is arbitrable.

■ Under the Federal Arbitration Act, 9 U.S.C. §§ 1–4 (1982), where the parties have agreed to seek dispute resolution by arbitration, the courts are asked to stay their hand. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The scope of the arbitration agreement will be interpreted liberally and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 103 S.Ct. at 941 & n. 27; *Johnson Controls,* 713 F.2d at 373. "[T]he court's function in an action to compel arbitration may not extend beyond ascertaining whether the party seeking arbitration has made a claim which *on its face* is governed by the contract." *National R.R. Passenger Corp.,* 501 F.2d at 427 (emphasis original). The presumption of arbitrability, however, is tempered by the caveat that parties cannot be forced to arbitrate controversies that they have not agreed to submit to arbitration. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

To support its argument that the present dispute is not arbitrable, Merrill Lynch relies primarily on *Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78 (2d Cir.1983) and the district court opinion in *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 83 Civ. 4312 (S.D.N.Y. Aug. 18, 1983), in which the appeal was pending. In *Coudert,* a divided panel of the Second Circuit held that a dispute involving a defamation claim of a former account executive was not arbitrable where the alleged defamation took place after the account executive had resigned. In *Downing,* a district court extended this holding to a dispute involving a violation of the solicitation clause after the employee had resigned and joined a competing firm. On appeal, however, the Second Circuit reversed the district court's exten-

troversy between a non-member and a member . . . arising out of the business of such member, . . . shall at the instance of any such party, be submitted for arbitration, in accordance with the provisions of the Constitution and the Rules of the Board of Directors." NYSE Const. art. VIII, § 1.

sion, finding that "a dispute over such a contract term would clearly be arbitrable notwithstanding the time at which the dispute arose." *Downing v. Merrill Lynch, Pierce, Fenner & Smith,* 725 F.2d 192, 195 (2d Cir.1984) (remanded to determine whether there was an agreement to arbitrate).

The sole issue in *Coudert* was the arbitrability under the Rules of the NYSE of a grievance arising out of an employer's allegedly tortious conduct. The majority in *Coudert* distinguished "grievance[s] *arising after* the termination of the agreement to arbitrate" from grievances that are based on *conditions that arise during* the term of the agreement to arbitrate. 705 F.2d at 81. The former are not arbitrable; the latter, however, are arbitrable regardless of whether the agreement to arbitrate has since ceased. In *Coudert,* the majority found that the basis of the grievance was the employer's conduct after the termination of the employment relationship and therefore also after the termination of the agreement to arbitrate. *Id.* at 82. Accordingly, the dispute was not found to be subject to the arbitration agreement. *Id.* Our case is distinguishable from *Coudert* and we decline to extend a rigid temporal approach to the determination of arbitrability in the situation before us.

To interpret the arbitration agreement in the manner asserted by Merrill Lynch would require reading the words "arising out of" as synonymous with "during." This interpretation is inconsistent with the words chosen and the intent of the parties. The language of the agreement is broad and the term "arising out of" contemplates that for some controversies the arbitration agreement will survive the employment relationship. We find that the present dispute is such a controversy. We find firm support for our conclusion in *Nolde Bros., Inc. v. Bakery & Confectionary Workers Union, AFL–CIO,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). In *Nolde* the question was whether a dispute over the severance pay provision contained in a collective bargaining contract was subject to the arbitration agreement contained therein even though the dispute arose after the collective bargaining agreement had expired. *Id.* at 250, 97 S.Ct. at 1071. Reaffirming its holding in *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court observed that "the parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement." *Nolde Bros.,* 430 U.S. at 252, 97 S.Ct. at 1072.

In *Coudert,* the subject matter of the dispute concerned post-termination defamation. To be sure, there had been an employment relationship between the parties. The cause of action and the rights and duties of the parties, however, were not dependent on, nor would they be determined with reference to, the employment contract. Thus the dispute did not arise out of the employment relationship. Consequently, the arbitration agreement did not survive the employment relationship for resolution of the controversy.

In contrast to a tort action, the factual circumstances presented here relate to a classic breach of contract situation. It is true that the alleged use of the records and solicitation of business occurred after the employees had resigned and thus after their employment contracts (and the agreement to arbitrate) had been terminated. However, the controversy itself arose out of, or because of, conditions that were imposed during the time the employment and arbitration agreements were in existence. It is clear from the complaint that Merrill Lynch's cause of action is dependent on the contract and that the rights and duties of the parties must be determined in light of the employment contract. This was not true in *Coudert.*

Although there are very few reported cases directly on point, the parties have submitted numerous unreported decisions involving essentially the same facts and arbitration clause presented in this case. The overwhelming majority of these cases have found that a dispute involving the post-ter-

mination violation of·the solicitation clause is arbitrable under Rule 347.[8]

For the reasons discussed, we hold that the present controversy "arise[s] out of the employment or termination of employment." At least as to the construction and applicability of these conditions, we conclude that the arbitration agreement remains viable beyond the employment relationship of the parties.

## II. *Preliminary Injunction*

■ In addition to determining that the controversy was nonarbitrable, the district court granted a preliminary injunction.[9] We consistently have held that the grant of preliminary relief is within the district court's discretion. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action,* 558 F.2d 861, 866 (8th Cir.1977). In light of our determination that the controversy is arbitrable, however, we find that the issuance of injunctive relief abrogates the intent of the Federal Arbitration Act and consequently was an abuse of discretion.

*Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Scott,* No. 83–1480 (10th Cir. May 12, 1983) (summary order staying the injunction pending arbitration).

Merrill Lynch urges this court to continue the preliminary injunction during the arbitration procedures. Merrill Lynch asserts that the continuance of the injunction is necessary to avoid.irreparable harm and to assure the viability of an adequate remedy at law. The cases cited by Merrill Lynch support the contention that injunctions can be granted to preserve the status quo.[10] However, in view of our determination that the Federal Arbitration Act applies, we decline to pass on these contentions. The parties have not alleged that the contract provides for or contemplates injunctive relief along the lines granted. Accordingly, the Act directs the court to stay the judicial action. 9 U.S.C. § 3.

■ The congressional intent revealed in the Arbitration Act is to facilitate quick, expeditious arbitration. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the district court had

---

**8.** See, e.g., *Merrill Lynch, Pierce, Fenner & Smith v. DeCaro,* 577 F.Supp. 616 (W.D. Mo.1983); *Merrill Lynch, Pierce, Fenner & Smith v. Thomson,* 574 F.Supp. 1472 (E.D. Mo.1983); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Scott,* No. 83– 1480 (10th Cir. May 12, 1983); *Coffield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. LR–C–83–231 (E.D.Ark. Apr. 13, 1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Minces,* No. MO–81–CA–74 (W.D.Tex. July 14, 1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Robinson,* No. 81–1587 (E.D.La. Sept. 15, 1980); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* Equity No. 3104781 (Md. June 10, 1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. E.F. Hutton & Co.,* No. 77 20612 NZ (Mich.Cir.Ct. Aug. 22, 1977); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Choden,* No. 488170 (Mo.Cir.Ct. July 5, 1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Snow,* No. C–83–3688 (Utah Dist.Ct. May 20, 1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Gorman,* No. 83–CV–915 (Wis.Cir.Ct. Mar. 10, 1983).

**9.** *See supra* note 1.

**10.** To support its claim for injunctive relief Merrill Lynch relies on *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064 (2d Cir.

1972). In *Erving,* the Second Circuit found that the dispute was arbitrable; however, it also granted injunctive relief for the purpose of maintaining the status quo. *Id.* at 1067. Although *Erving* does provide some support for Merrill Lynch, the case is distinguishable. First, the employee's contract stipulated that his services were exceptional and unique and that the loss of them to the Squires would be unestimatable and not compensable by damages. In light of these stipulations, the contract expressly provided for injunctive relief, pending completion of the arbitration process. *Id.* at 1006 n. 1. Second, the issues addressed by the court to determine the propriety of injunctive relief were not the same ones that would ultimately be determinative of the merits of the dispute. In contrast, in our case we do not have such a contract provision and, moreover, the evidentiary foray necessary to satisfy the *Dataphase* criteria are essentially the same that we have determined are more properly left to arbitration. *See also Guinness-Harp Corp. v. Joseph Schlitz Brewing Co.,* 613 F.2d 468 (2d Cir.1980) (supplier enjoined from cutting off supply pending arbitration where contract expressly forbade termination until arbitration was completed).

stayed ruling on a party's motion to compel arbitration because a similar action was proceeding in state court. Reversing, the Supreme Court held:

> This refusal to proceed was plainly erroneous in view of Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.... [The Federal Arbitration Act calls] for an expeditious and summary hearing, with only restricted inquiry into factual issues.... The [district court's] stay thus frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements.

*Moses H. Cone,* 103 S.Ct. at 940–41 (footnote omitted). Here, the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (issue of fraud in inducement of contract was for arbitrator); *see also Buffalo Forge Co. v. United Steelworkers of America, AFL–CIO,* 428 U.S. 397, 412, 96 S.Ct. 3141, 3149, 49 L.Ed.2d 1022 (1976). In *Buffalo Forge,* the Court refused to enjoin a strike pending arbitration of the validity of the strike. The Court recognized that sanctioning judicial intervention at this preliminary stage would eviscerate the intent of arbitration agreements. *Id.* at 412, 96 S.Ct. at 3149.

We find this compelling authority to hold that, where the Arbitration Act is applicable and no qualifying contractual language has been alleged, the district court errs in granting injunctive relief. In doing so, we sustain not only "the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp.,* 388 U.S. at 404, 87 S.Ct. at 1806.

For the reasons stated above, we reverse and remand to the district court for proceedings consistent with the determinations here.