**PEABODY COALSALES COMPANY,**
**Appellant,**

v.

**TAMPA ELECTRIC COMPANY,**
**Appellee.**

**No. 94–3144.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1994.

Decided Sept. 23, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 20, 1994.

Michael O'Keefe, St. Louis, MO, argued (W. Stanley Walch and Mary M. Bonacorsi, on the brief), for appellant.

Mark Arnold, St. Louis, MO, argued, for appellee.

Before WOLLMAN, BEAM, and HANSEN, Circuit Judges.

BEAM, Circuit Judge.

Peabody Coalsales Company appeals from an order denying its request for an injunction in aid of arbitration. Relying on this court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286 (8th Cir.1984), the district court ordered the parties to arbitrate their contract dispute but refused to order continued performance under the contract pending arbitration. Because we believe the district court improperly applied *Hovey,* we reverse.

## I. BACKGROUND

Since 1989, Peabody has supplied coal to Tampa Electric Company under a fifteen-year "Coal Supply Agreement" (Agreement) which provides for arbitration of disputes.[1] The present dispute arose when Peabody supplied only part of the coal scheduled for delivery in June 1994. As a result, Tampa Electric requested assurances from Peabody that Peabody would be able to supply coal as agreed. Unsatisfied with Peabody's response, Tampa Electric attempted to cancel the Agreement and refused to accept future coal shipments. Peabody responded by obtaining an ex parte temporary restraining order (TRO) in state court. The TRO ordered Tampa Electric to accept coal shipments. Tampa Electric removed the case to federal court.

In the district court, both parties moved for an order compelling arbitration. Peabody also moved for an injunction requiring the parties to continue performance under the Agreement pending resolution of the dispute in arbitration. After a hearing, the district court compelled arbitration and stayed all court proceedings until the disposition of arbitration. The court also found that the Agreement "contemplates continued performance during the pendency of arbitration" but "does not authorize an injunction to compel continued performance." *Peabody Coalsales Co. v. Tampa Electric Co.,* No. 4:94–CV–1616, mem. op. at 3 (E.D.Mo. Aug. 25, 1994). Based on its reading of *Hovey,* the court denied Peabody's motion because the Agreement does not specifically authorize an injunction. Peabody appeals this denial of injunctive relief.

## II. DISCUSSION

Resolution of this appeal involves an examination of the role of the courts in disputes governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16. We have held that this role is a very limited one.[2] In *Hovey,* this court held that "where the [FAA] is applicable and no qualifying contractual language has been alleged, the district court errs in granting injunctive relief." 726 F.2d at 1292. We found this approach consistent with the plain meaning of the statute and the "'unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967)). "[T]he judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator." *Id.* However, *Hovey* does not require that an injunction be specifically authorized in the contract between the parties. *Hovey* did not decide whether injunctive relief could be granted if the contract contains "qualifying language."

The contract in this case does contain such language.[3] Section 13.6 of the Agreement between Peabody and Tampa Electric provides, "Unless otherwise agreed in writing by Buyer and Seller, performance of their respective obligations under this Agreement shall be continued in full by the parties during the dispute resolution process...." Appellant's Appendix at 73. Based on this provision,[4] we hold that the

1. The original parties to the Agreement were Tampa Electric Company and Peabody Development Company. Peabody Development Company subsequently assigned its rights and obligations under the Agreement to Peabody Coalsales Company.

2. We acknowledge that a number of other circuits have interpreted the role of the courts more broadly. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano,* 999 F.2d 211, 214–15 (7th Cir.1993) (allowing district court to grant restraining order until arbitration commenced); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1051–54 (2d Cir.

1990) (allowing district court to grant injunctive relief where failure to do so would render arbitration a "hollow formality").

3. We find "qualifying contractual language" to mean language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute.

4. The parties argued at length about the import of section 13.3 of the Agreement. This section provides in part, "This agreement to arbitrate shall be specifically enforceable...." Appellant's Appendix at 72. Tampa Electric asserted that only the "agreement to arbitrate," not the

district court erred in refusing to order the parties to continue performance pending arbitration.

As in *Hovey*, our decision is guided by the plain language of the FAA and the "unmistakably clear congressional purpose" to avoid delay in the courts. *Hovey*, 726 F.2d at 1292. When a court determines that the making of the arbitration agreement is not at issue, the FAA requires the court to "make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement.*" 9 U.S.C. § 4 (emphasis added). *See also Volt Info. Sciences, Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 474–75, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) ("[Section 4] confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties']* agreement.' "). In this case, the bargained-for terms of the Agreement require continued performance as part of the dispute resolution process. Thus, an order compelling arbitration "in accordance with the terms of the agreement" must necessarily include an order requiring continued performance.

This result is consistent with the congressional purpose to avoid court delays. Where, as here, the contract *clearly* requires continued performance during the arbitration process, the judicial inquiry is limited and arbitration under the contract terms will not be delayed. The court need only read the contract and order arbitration according to its provisions. Such an inquiry does not implicate *Hovey*'s concern with becoming entangled in the merits of the underlying dispute.[5] Because we do not reach the merits, our decision will not impact the ultimate resolution of the underlying dispute. The arbitration panel, in accordance with its determination on the merits, may modify the relief granted by this court. In addition, the arbitrators are free to adjust the ultimate award, if necessary, to take into account the fact that Tampa Electric continued performance during arbitration.

In light of the above, we disagree with Tampa Electric's assertion that a showing of irreparable harm is necessary to support an order requiring performance pending arbitration. Though some other circuits have required such a showing,[6] they did so under circumstances not implicating this court's heightened concern with avoiding the merits of the underlying dispute. It would be inconsistent with *Hovey* to delay the arbitration proceedings by requiring an evidentiary hearing in district court on the existence of irreparable harm or the other standard criteria for the grant of a preliminary injunction.[7]

performance provisions of section 13.6, are specifically enforceable. Peabody took the position that section 13.6 is part of the "agreement to arbitrate." Based on our reading of *Hovey* and the FAA, an order requiring continued performance is appropriate regardless of whether section 13.6 is "specifically enforceable." Nonetheless, we believe that the Agreement does contemplate enforcement of section 13.6 and find this bolsters Peabody's claim for relief.

5. Tampa Electric argues that we cannot avoid the merits because it has no obligations under section 13.6 unless the dispute is resolved in Peabody's favor. We disagree. The core dispute to be arbitrated involves Tampa Electric's request for assurances and attempted cancellation of the Agreement. Section 13.6 requires continued performance during arbitration regardless of how this dispute is ultimately resolved. Though Tampa Electric may now wish it had not, it agreed to continue performance during dispute resolution and cannot now escape that obligation.

6. *See Nemer Jeep–Eagle, Inc. v. Jeep–Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir.1993) (requiring balancing of equitable factors including irreparable harm); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir.1986) (allowing injunction in aid of arbitration provided the normal prerequisites for such relief are established).

7. Though the parties have characterized the requested relief as a preliminary injunction, it is not "preliminary" in the traditional sense. It is not preliminary to the court's ultimate resolution of the merits. The merits are properly left to the arbitrators and *Hovey* directs that we avoid the delay that would result from application of the *Dataphase* criteria. *See Hovey*, 726 F.2d at 1291 n. 10. In *Ferry–Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589 (8th Cir.1984), this court did apply the *Dataphase* criteria in a case involving arbitration. However, the injunction at issue in *Ferry–Morse* was a traditional preliminary injunction. The district court had not yet determined whether the underlying dispute was arbitrable. Applying the *Dataphase* criteria, this court affirmed a grant of injunctive relief while the district court addressed the merits of the arbitrability issue. Here, the parties agree that the core dispute is arbitrable, so *Ferry–Morse* is inapposite.

Where the language of the contract is clear, the FAA requires that the court honor the agreement of the parties and order them to arbitration.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's denial of Peabody's motion for an order requiring continued performance. We remand with directions to enter an order compelling arbitration in accordance with the terms of the Agreement and specifically ordering the parties to continue to perform under the Agreement pending resolution of their dispute in arbitration. We again emphasize that the arbitrators are authorized to modify the order of the district court in accordance with their resolution of the underlying dispute.[8]

---

8. The appellant's motion for a stay and injunction pending appeal is denied as moot. The appellee's motion to strike a portion of the supplemental appendix is granted.