**ELECTRIC LIGHTWAVE, INC.,**
**a Delaware corporation,**
**Plaintiff,**

v.

**Bill RICHARDSON, Secretary United States Department of Energy, acting by and through Judith Johansen, administrator of the Bonneville Power Administration, Defendant.**

No. Civ.A. 99–540–HA.

United States District Court,
D. Oregon.

May 18, 1999.

James S. Smith, Davis Wright Tremaine, LLP, Portland, OR, for plaintiff.

Thomas C. Lee, Assistant United States Attorney, Portland, OR, for defendant.

## OPINION AND ORDER

HAGGERTY, District Judge.

Plaintiff Electric Lightwave ("ELI") brought this action to compel arbitration pursuant to the terms of its contract with the Bonneville Power Administration ("BPA"), an agency of the United States Department of Energy. ELI leased fiber optic cables owned by the BPA, and § 8 of that agreement contains performance requirements ELI must meet in order to maintain its exclusive rights. In February 1999 the BPA concluded that ELI had not met those criteria and declared its rights nonexclusive, cutting ELI's access to the cable fibers it had not yet begun to use, but leaving the remainder of ELI's leased capacity intact. Section 24 of the agreement specifies that any disputes would be arbitrated and provides that "[p]ending resolution of a disputed matter, the Parties shall continue performance of their respective obligations hereunder." ELI seeks an order compelling arbitration, requiring the BPA to reattach ELI's fibers, and preventing the BPA from declaring its rights nonexclusive. The BPA has since agreed to arbitrate, but objects to an order for continued performance.

As authority for its position, ELI cites *Peabody Coalsales Co. v. Tampa Electric Co.*, 36 F.3d 46 (8th Cir.1994), in which the Eighth Circuit ordered a party to comply with a contract term requiring continued performance during arbitration, because the Federal Arbitration Act requires courts to order "parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* at 48 (quoting 9 U.S.C. § 4). The government has moved to dismiss ELI's complaint, arguing that sovereign immunity precludes the court from entering such an order.

"[A] suit against the United States must start from the ... assumption that no relief is available." *Tucson Airport Authority v. General Dynamics Corp.* 136 F.3d 641, 644 (9th Cir.1998). ELI "may sue the United States only if Congress has waived sovereign immunity for the lawsuit[.]" *Id.* Before the late 1800's, when Congress, through the Tucker Act, established the Court of Claims, no general statute consented to lawsuits against the

United States for money damages. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). While the Tucker Act waived sovereign immunity over contract claims, that waiver is limited. *North Side Lumber Co. v. Block,* 753 F.2d 1482, 1484–85 (9th Cir. 1985), *cert. denied,* 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985).

■ Under the Tucker Act, 28 U.S.C. § 1346, district courts have concurrent jurisdiction with the Court of Claims for claims based upon contracts not exceeding $10,000; however, the Tucker Act "has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States." *Id.* Moreover, the Tucker Act does not waive sovereign immunity for specific performance of a government contract; rather, it is "well-established . . . that the federal courts do not have power to order specific performance by the United States of its alleged contractual obligations." *Doe v. Civiletti,* 635 F.2d 88, 89 (1980). *See also North Side Lumber,* 753 F.2d at 1485; *Lee v. Blumenthal,* 588 F.2d 1281, 1283 (9th Cir.1979).

■ In 1990 Congress amended this statutory scheme to allow the government to agree to arbitrate certain disputes. Section 576 of Title 5 states,

An agreement to arbitrate a matter to which this subchapter applies is enforceable pursuant to section 4 of title 9 [ie, the Federal Arbitration Act], *and no action brought to enforce such an agreement shall be dismissed nor shall relief therein be denied on the grounds that it is against the United States or that the United States is an indispensable party.*

5 U.S.C. § 576 (emphasis added). For three reasons, the court rejects ELI's argument that § 576 waives sovereign immunity for claims for specific performance during arbitration.

■ First, "waivers of sovereign immunity are strictly construed." *Tucson Airport.* 136 F.3d at 644. The Ninth Circuit has made it quite clear that unless Congress has unequivocally waived immunity, a private plaintiff is not entitled to relief, even if the result seems harsh. *Id.* Strictly construed, the general language of § 576 is not sufficient to overcome the well-established rule that specific performance cannot be obtained against the government.

Second, this conclusion is buttressed by the Ninth Circuit's interpretation of the almost identical language of the Administrative Procedures Act (APA). 5 U.S.C. § 702 of the APA states in pertinent part,

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority *shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.*

Section 702's language is practically identical to the language of § 576. In *North Side Lumber,* 753 F.2d at 1484–85, the Ninth Circuit held that § 702 did not waive the prohibition against specific performance, finding that the waiver of immunity was only partial and did not overcome the restriction on granting equitable or injunctive relief. The Ninth Circuit recently relied on *North Side Lumber* in ruling that a lawsuit brought by a weapons contractor for specific performance and equitable relief could not be maintained because it arose from a contract with the federal government.[1] *Tucson Airport.* 136 F.3d at 642–647.

---

1. Further, in *Tenaska Washington Partners II v. United States,* 34 Fed.Cl. 434 (1995), although the issue was not squarely before it, the Court of Claims suggested that specific performance is not available against the United States, even where it has agreed to arbitrate.

Third, *Peabody Coalsales Co. v. Tampa Electric Co.*, 36 F.3d 46 (8th Cir.1994), the case relied on by ELI for ordering continued performance during arbitration, specifically noted that enforcement of such a provision is appropriate only where circumstances allow the court to merely "read the contract and order arbitration according to its provisions." *Id.* at 48. The court therefore distinguished *Peabody* from an earlier case, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286 (8th Cir.1984), in which it refused to enter such an order because doing so would have required it to conduct a detailed analysis, thereby interfering with the arbitrator's independent decision-making. In this case, § 8 of the contract allows the BPA to use its "discretion" to declare ELI's rights non-exclusive if specified criteria are not met. Determining whether ELI is entitled to continued performance would require this court to examine the propriety of BPA's exercise of decision. Doing so would interfere with the arbitrator's authority to decide this case and, therefore, would be inappropriate.

Therefore, for the foregoing reasons,

**IT IS HEREBY IS ORDERED** that plaintiff's motion to compel arbitration is denied as moot and its motion for an order requiring continued performance is denied on the basis of sovereign immunity. (Doc. 1.) Furthermore, the government's motion to dismiss is granted. (Doc. 8.)