WMA SECURITIES, INC., Plaintiff,

v.

Paula RUPPERT, et al., Defendants.

No. C–1–99–492.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 23, 1999.

Kaljiu Nekvasil, Stephen Krosschell of Goodman & Nekvasil, PA, for Paula Ruppert et al.

Kevin R. McDermott of Schottenstein, Zox & Dunn, P.A., for WMA Securities, Inc.

### Memorandum and Order

BECKWITH, District Judge.

On December 20, 1999, this Court heard Plaintiff's motion (Doc. 14) for an order enjoining an arbitration proceeding initiated by Paula Ruppert and Anne Stone–Fischl, Defendants herein, and Defendants' motion (Doc. 18) to compel the arbitration of the dispute giving rise to that arbitration proceeding. At the conclusion of that hearing, the Court granted Defendants' motion and denied Plaintiff's motion for the reasons stated on the record and set forth more fully herein.

### 1. Background

On April 27, 1999, Defendants filed a first amended statement of claim in the National Association of Securities Dealers, Inc. ("NASD") arbitration forum. Pursuant to that statement of claim, Defendants sought to arbitrate claimed losses from their investment in promissory notes issued by First Lenders Indemnity Corporation ("FLIC"). Both Defendants alleged that they had invested in the FLIC promissory on the basis of misrepresentations made by investment advisors who were registered representatives of Plaintiff at the time they made the alleged misrepresentations. Defendant Ruppert alleged that she relied upon misrepresentations by Bret Sander; Defendant Stone–Fischl alleged that she relied upon misrepresentations by William Pence. The evidence of record unequivocally demonstrates that Messrs. Sander and Pence were Plaintiff's registered representatives at the time of the alleged misrepresentations.[1] Defendants claim in the arbitration proceeding that Plaintiff violated NASD rules governing the supervision of registered representatives by broker-dealers[2].

Plaintiff initiated this action for equitable relief, in the form of an order enjoining the arbitration proceeding initiated by Defendants. In its complaint in this matter and in its arguments in support of its motion for injunctive relief, Plaintiff asserts that it has not agreed to arbitrate Defendants' arbitration claims. In the absence of an arbitration agreement, Plaintiff contends it is not required, and cannot be compelled, to arbitrate those claims.

1. Because Defendants' arbitration claims are based, at least in part, upon the alleged misrepresentations, the fact that Messrs. Sander and Pence may no longer have been associated with Plaintiff when Defendants' investments in the FLIC promissory notes were consummated is not dispositive of any of the issues raised by the parties in this action.

2. The parties agree that Plaintiff is a member of the NASD and a broker-dealer for purposes of the NASD Rules.

Defendants oppose Plaintiff's motion for injunctive relief and move to compel arbitration on the ground that Plaintiff is required by NASD Rule 10301 to arbitrate disputes with its customers to the extent that those disputes arise from Plaintiff's business or the activities of persons associated with Plaintiff. Defendants contend that they were customers of Plaintiff and that their dispute with Plaintiff arises from Plaintiff's business and the activities of Messrs. Sander and Pence while they were associated with Plaintiff.

Prior to the December 20, 1999 hearing, the Court permitted the parties to conduct discovery, and the parties agreed that the Court's resolution of the issues raised by their motions would be dispositive of this matter. At the hearing, the parties presented their arguments in favor of and in opposition to the pending motions and directed the Court's attention to the evidence in the record that was, in their views, supportive of their respective positions.

### 2. The Federal Policy Favoring Enforcement of Agreements to Arbitrate

■ The federal policy favoring enforcement of valid agreements to arbitrate disputes is now well-established. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Accordingly, once a court has determined that a valid agreement to arbitrate a dispute exists, all other issues concerning the dispute must be reserved to the arbitration forum. *See Ferro Corp. v. Garrison Industries*, 142 F.3d 926, 933 (6th Cir.1998)(citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)); *see also Medika International, Inc. v. Scanlan International, Inc.*, 830 F.Supp. 81, 87 (D.P.R.1993) ("Having found the arbitration clause to be valid, we refer all [other] issues arising from the parties' relationship ... to the arbitrator"). While the issue of the existence of a valid agreement to arbitrate is properly resolved by the federal court, issues related to the scope of that agreement are not. *See Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. 927. The issue before the Court in this matter, then, is whether Plaintiff agreed to arbitrate disputes with Defendants.

### 3. NASD Rule 10301

Subsection (a) of NASD Rule 10301 provides as follows

Any dispute, claim, or controversy ... between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code ... upon the demand of the customer.

Plaintiff concedes that NASD Rule 10301(a) is tantamount to an agreement to arbitrate. It does not deny, therefore, that it has agreed to arbitrate disputes, claims, or controversies with its customers. It argues, however, that Defendants were not its customers and that the disputes embodied in Defendants' arbitration claims did not arise from Plaintiff's business.

### 4. Were Defendants Customers of Plaintiff?

■ While Plaintiff has argued that Defendants are not, and never have been, its customers, it concedes that Defendant Stone–Fischl and her late husband transferred a mutual fund account to Plaintiff prior to the events giving rise to Ms. Stone–Fischl's arbitration claims. Plaintiff implores the Court to restrict the term "customer" in NASD Rule 10301(a) to persons who had accounts with Plaintiff, thereby excluding those persons who discussed investment possibilities with Plaintiff's registered representatives but did not open accounts with Plaintiff. By Plaintiff's own narrow definition of "customer," Defendant Stone–Fischl was a customer at the time Plaintiff's registered representative William Pence made the alleged misrepresentations that give rise to Mr.

Stone–Fischl's claims. Accordingly, Plaintiff's argument that Ms. Stone–Fischl is not a customer for purposes of NASD Rule 10301(a) is unavailing.

Defendant Ruppert never opened an account with Plaintiff. She dealt only with Bret Sander, who was Plaintiff's registered representative when he made alleged misrepresentations concerning FLIC promissory notes to Ms. Ruppert. She argues, nevertheless, that her interaction with Mr. Sander as an investment advisor while he was a registered representative for Plaintiff brings her within the class of "customers" for purposes of NASD Rule 10301(a).

Plaintiff's narrow definition of the term "customer" in Rule 10301(a) finds no support in the judicial decisions applying that rule. A broader interpretation, encompassing persons who had informal business relationships with NASD members, is well-supported in the case law and the NASD Rules. NASD Rule 0120(g)'s definition of "customer" excludes only brokers and dealers. Defendants are neither brokers nor dealers. Applying New York Stock Exchange Rule 600(a), which is analogous in all pertinent respects to NASD Rule 10301(a), the United States District Court for the Northern District of Illinois concluded that

> [d]efining customers to include not only those who executed purchases with member firms, but also those who maintained a less formal business relationship at the time of the alleged misconduct, ... recognizes market reality.

*Lehman Brothers, Inc. v. Certified Reporting Co.*, 939 F.Supp. 1333, 1340 (N.D.Ill. 1996). In *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352 (2d Cir.1995), the court concluded that investors who had been defrauded by a representative of an NASD member firm, but who never opened accounts with that firm, were, nonetheless, customers. The Court based its decision, in large part, upon the fact that the investors had transacted business with a representative of Oppenheimer & Company, the member firm, while that representative was associated with the firm.

There are two major flaws in Oppenheimer's argument. First, it treats Oppenheimer's Vice President DeSimone as if he were a stranger, rather than one for whose acts Oppenheimer is responsible. In contending that Oppenheimer ... never dealt with the Claimants, Oppenheimer overlooks the critical fact that when those Claimants dealt with DeSimone, they were dealing with Oppenheimer; DeSimone's acts were those of Oppenheimer.

*Id.* at 357.

In this case, both Defendants dealt with registered representatives of Plaintiff while those representatives were associated with Plaintiff. The evidence unequivocally establishes that both Defendants knew that their investment advisors were associated with Plaintiff at the time of the alleged misrepresentations that give rise to Defendants' arbitration claims. The facts that Defendant Ruppert never had an account with Plaintiff and that the FLIC promissory notes in which both Defendants invested were not approved products of Plaintiff are irrelevant. By conducting business with Plaintiff's registered representatives, Defendants conducted business with Plaintiff and became its customers.

### 5. Did Plaintiff Agree to Arbitrate the Claims in Question?

█ Plaintiff argues that it is not required to arbitrate the claims asserted by Defendants, even if Defendants were its customers, because those claims do not "aris[e] in connection with the business of [Plaintiff]," as required by NASD Rule 10301(a). Plaintiff's argument is fatally flawed in two respects. First, it is focussed narrowly upon the sale of FLIC promissory notes that are only tangentially related to Defendants' arbitration claims. Second, it ignores the second part of the disjunctive clause quoted above. The full clause requires that the claim arise *either* in connection with Plaintiff's business *or* in connection with the activities of persons associated with Plaintiff.

Plaintiff contends that it never sold FLIC promissory notes or recommended that its customers invest in them. Accordingly, it contends that Defendants' claims related to their investment in FLIC promissory notes do not arise in connection with Plaintiff's business.

Defendants' claims against Plaintiff are based upon its alleged failure to effectively supervise its registered representatives Bret Sander and William Pence. The promissory notes in which Defendants invested in reliance upon Plaintiff's representatives' alleged misrepresentations are only tangentially relevant to Defendants' arbitration claims. Plaintiff's business includes the supervision of its large corps of registered representatives. Because Defendants' claims arise in connection with the supervision of two of those representatives, they arise in connection with Plaintiff's business. *See Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 85 F.3d 21, 29 (2d Cir.) (applying analogous New York Stock Exchange rules), *cert. denied,* 519 U.S. 1040, 117 S.Ct. 609, 136 L.Ed.2d 534 (1996).

Plaintiff ignores the "activities of such associated persons" language of NASD Rule 10301(a). It does not argue that Bret Sander and William Pence were not, at the time they made the alleged misrepresentations, associated persons for purposes of the rule, nor does it deny that Defendants' arbitration claims arise in connection with the activities of Messrs. Sander and Pence while they were associated with Plaintiff.

Defendants' claims, as they are stated, arise from Plaintiff's failure to supervise its registered representatives and from the resulting misrepresentations upon which Defendants allegedly relied to their detriment. Those claims are, therefore, related both to Plaintiff's business and to the activities of its registered representatives.

They are the proper subject of arbitration pursuant to NASD Rule 10301(a).[3] Defendants' motion to compel arbitration (Doc. 18) is, therefore, well-taken.

### 6. *Plaintiff's Motion for Injunctive Relief*

In determining whether to grant preliminary injunctive relief, the Court considers, *inter alia,* the movant's likelihood of success on the merits of its claims. *See Forry v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1988). Plaintiff's success on its claims in this action depends upon its ability to demonstrate that it is not required to arbitrate the claims asserted by Defendants. As the Court has concluded that Plaintiff is required to arbitrate those claims, Plaintiff is not likely to succeed on the merits of its claims.

The other factors relevant to the Court's consideration of a motion for preliminary injunctive relief also favor the denial of that motion. Defendants would be harmed by the issuance of an order enjoining the arbitration proceeding they have initiated. *See Forry, supra.* Such an order would deprive them of the forum of their choice and the ability of that forum to dispose of claims rapidly and without the delays associated with the court systems. The public interest would not be served by the issuance of an order narrowly defining the class of persons who may assert in arbitration claims against members of the NASD. *See id.* The final relevant consideration is the likelihood that the issuance of the requested order would prevent irreparable harm to the movant. *See id.* The harm asserted by Plaintiff is that it would be forced to defend itself against claims in a forum to which it has not agreed. Having concluded that NASD Rule 10301(a) is tantamount to an agreement to arbitrate the claims Defendants have asserted, the

---

**3.** The fact that Plaintiff may wish to assert claims against Messrs. Sander and Pence arising from the same set of facts that give rise to Defendants' arbitration claims and that it may be precluded from asserting those claims in the arbitration forum does not prevent enforcement of NASD Rule 10301(a) with respect to Defendants' claims against Plaintiff. *See Equal Employment Opportunity Commission v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448, 461 (6th Cir.1999).

Court further concludes that Plaintiff will not suffer irreparable harm if it is compelled to arbitrate those claims. Accordingly, considerations identified in *Forry* are of no benefit to Plaintiff. The Court concludes that Plaintiff is not entitled to the relief it seeks.

### 7. *Conclusion*

For those reasons, Plaintiff's motion for preliminary injunction (Doc. 14) is hereby **DENIED.** Defendants' motion to compel arbitration (Doc. 18) is **GRANTED.** This action is **CLOSED.**

**IT IS SO ORDERED.**