VESTAX SECURITIES
CORPORATION,
Plaintiff,

v.

Arthur B. MCWOOD, Defendant.

Vestax Securities Corporation,
Plaintiff,

v.

Archibald C. Montgomery,
et al., Defendants.

No. 99CV60704AA.

United States District Court,
E.D. Michigan,
Southern Division.

July 24, 2000.

William Holmes, Grand Rapids, MI, Melvin Moseley Jr., Grand Rapids, MI, Brian Masternak, Grand Rapids, MI, for plaintiff.

Anthony V. Trogan, Bingham Farms, MI, for defendant.

*OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND TO DISMISS*

STEEH, District Judge.

Defendants are alleged clients of plaintiff securities brokerage firm Vestax Securities Corporation (Vestax). Vestax is a member of the National Association of Securities Dealers (NASD). Defendant-investors have initiated an arbitration claim against Vestax pursuant to NASD procedures arising out of the conduct of Vestax dealers Jon C. Davis and Brian Dunn who allegedly engaged in misconduct with respect to the sale of certain securities. After the investors filed a joint arbitration claim with the NASD, Vestax brought two declaratory judgment actions in this court[1] seeking a judicial determination that it is not liable for securities violations on the grounds that Davis and Dunn were not acting as representatives of Vestax when the violations occurred, or alternatively, that no misconduct took place. The first of the two lawsuits, assigned docket number 97–60704, was brought by Vestax against Arthur McWood and was assigned to this judge. The other, 97–60739, brought by Vestax against investors Archibald C. Montgomery, Barbara L. Montgomery, Margaret L. Montgomery,[2] and Chrom Services, was originally assigned to Judge Rosen but now has been reassigned to this judge by virtue of its companion case status. Now before the court are defendant-investors' motions to compel arbitration and to dismiss these declaratory judgment actions. A hearing on these motions was delayed based on a stipulated adjournment and time extension agreed to by the parties. Oral argument was heard on July 18, 2000. For the reasons stated below, defendants' motions to compel arbitration will be granted and the declaratory judgment actions will be dismissed.

*BACKGROUND*

Vestax is an Ohio securities dealer with 625 registered agents. Defendants are all Michigan residents. It is not disputed that Davis was a Vestax agent from July 6, 1990 to his death in late 1998 and that Davis was Dunn's supervisor. At the time of the alleged misrepresentations, Davis was allegedly employed as a Vestax area manager. The parties agree that Dunn was a Vestax agent from May 21, 1991 to May 18, 1999. In the arbitration claim which is currently pending, Arthur McWood alleges misconduct in the sale of securities in Castle Capital, Inc., TNK Resources (a/k/a Opus Minerals), and Rangestar in 1994 through 1998, and Archibald C. Montgomery and Barbara L. Montgomery individually and as trustees of their living trusts, and Chrom Services (collectively the Montgomery defendants) allege misconduct in the sale of securities in Capella Computer stock, Opus Minerals stock, and Rangestar stock. Although the arbitration claim and the declaratory judgment actions here name Barbara L. Montgomery and Archibald Montgomery in their individual capacities and as trustees of their living trusts, both denied trustee status at their depositions.[3] Defendants accuse Dunn and Davis of misconduct including failing to make suitable investment recommendations, accepting commissions not disclosed to them, issuing press releases prior to selling the securities, encouraging the purchase of securities based on

---

1. Vestax filed a third declaratory judgment action arising out of the same NASD arbitration claim at issue here against different investors in the United States District Court for the Northern District of Ohio. A motion to compel arbitration also is pending in that lawsuit.

2. Defendants concede that they are not pursuing any claims on behalf of Margaret Montgomery. (Plaintiff's Exhibit Q at 76).

3. Barbara Montgomery testified that she was not a trustee of any trusts. (Plaintiff's Exhibit Q at 12). Also, Archibald Montgomery testified that neither he nor his wife are trustees of their living trusts but stated that they made all purchase decisions over those investments prior to their transfer to living trusts in June, 1999. (Plaintiff's Exhibit Q at 19, 80–81).

insider training information, engaging in private securities transactions, and front running trades. In their arbitration claims against Vestax, the Montgomery defendants seek approximately $900,000 in damages and McWood seeks approximately $110,000 in damages.

As to the declaratory judgment action involving Arthur McWood, there is no dispute that McWood had an account with Vestax. As to the action involving the Montgomery defendants, only the Archibald C. Montgomery Living Trust and the Barbara L. Montgomery Living Trust had accounts with Vestax. Purchasers Barbara L. Montgomery and Archibald C. Montgomery, in their individual capacity, and their corporation, Chrom Services Inc., admit that they never had established accounts with Vestax. Vestax contends the Archibald C. Montgomery Living Trust was never active, and never bought, sold or held securities. Vestax further argues that the Barbara L. Montgomery Living Trust was established for the purchase of mutual funds which are not in dispute in this litigation.

Vestax is seeking to avoid defending the NASD arbitration claim filed by defendants through this litigation. Vestax seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that it has no liability to defendants as Dunn and Davis were allegedly not acting in their representative capacities when the alleged misconduct occurred, or alternatively, no misconduct occurred. The second argument appears irrelevant because if Dunn and Davis were acting as Vestax representatives in the sale of the securities at issue, mandatory arbitration is required based on Vestax's status as an NASD member and its agreement to arbitrate all claims arising out of its own or its representatives' business with its customers. NASD Rule 10101(c).

As a member of the NASD, Vestax has expressly agreed to arbitrate all disputes arising out of its or its representatives' transactions with public customers. Specifically, Rule 10101 of the Code of Arbitration Procedure governing NASD members provides:

> This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the bylaws of the Association **for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the association,** or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of any disputes involving the insurance business of any member which is also an insurance company:
>
> (a) Between or among members;
>
> (b) Between or among members and associated persons;
>
> (c) **Between or among members or associated persons and public customers,** or others; and
>
> (d) Between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures, and participants, pledges, or other persons using the facilities off a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.

NASD Rule 10101 (emphasis added). The arbitration requirement is mandatory and a member's failure to arbitrate it is a violation of the NASD Code which is "deemed conduct inconsistent with just and equitable principles of trade." NASD Code Rule 10100.

■ McWood and the Montgomery defendants both filed answers and counterclaims alleging that this dispute is subject to mandatory arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* Through the same counsel, defendant-investors have filed motions to compel arbitration and to dismiss Vestax's declaratory judgment actions against

them. They argue that arbitration is mandatory based on Vestax's membership in the NASD. None of the investors had a written contract requiring that disputes be subject to NASD arbitration.[4] They argue that arbitration is required both as to the defendants who had opened accounts with Vestax, namely McWood and the two trust defendants, and as to the defendants who did open Vestax accounts.

It is not disputed that Dunn and Davis purchased the securities in dispute on behalf of the Montgomery defendants through Roney & Co., (Plaintiff's Exhibits K and L and Conley Affidavit) now known as Raymond James. Dunn and Davis, however, were not representatives of Roney & Co. Vestax received no commissions on these transactions. It is also agreed that Dunn and Davis purchased most of the securities at issue on behalf of McWood through National Discount Brokers and Ameritrade. (Defendant's Exhibit J and I and Conley Affidavit). However, they were never agents of National Discount Brokers or Ameritrade. With respect to McWood, Vestax admits that some of the Rangestar transactions in dispute, amounting to approximately $20,000, were actually purchased through Vestax and Vestax received commissions on these transactions. (Response brief at 4). Vestax admits that arbitration is required to adjudicate this part of McWood's claim. (Response brief at 13).

Vestax contends that all of its approximately 625 registered representatives are independent contractors who only act in a representative capacity when they are executing a security transaction, such as purchasing a security through Vestax, with written notification to Vestax and written authorization by Vestax to carry out the transaction. While Vestax may perceive its dealers' representative capacity as being so limited, the defendants in this case each testified that they believed Davis and Dunn were acting on behalf of Vestax when the subject securities were purchased. (Defendants Exhibits E). Vestax further contends that Davis performed the securities transactions in dispute on behalf of his investment advisory service firm known as Strategic Capital Consulting which was registered with the Securities & Exchange Commission (SEC) or through his real estate mortgage firm Jondco. This raises a factual dispute for the NASD arbitrators to resolve, and in fact the question is already squarely before them, as defendants' NASD arbitration claim names both Vestax and Strategic Capital Consulting Corp. as defendants.

Vestax has submitted proof that none of the subject securities, other than McWood's $20,089 purchase of Rangestar stock, were transacted through Vestax accounts. Vestax relies on the affidavit of R. Jack Conley, CEO and President of Vestax, which states that after receiving demand letters from defendant-purchasers' attorney on July 24 and September 16, 1999, Vestax instituted an internal investigation which confirmed that none of the securities in dispute, other than McWood's purchase of Rangestar securities, were transacted through any Vestax accounts. (Plaintiff's Exhibit A). Vestax maintains that it did not know about the purchase of the securities in dispute, did not research those securities, or perform any other work in connection with their purchase. But Vestax has not denied that Dunn and Davis were its registered agents at the time of their alleged misconduct, nor has it challenged defendants' testimony that they purchased the securities in dispute on the advice of Dunn and Davis with the belief that these individuals were Vestax brokers

---

4. Vestax has not argued that defendant-investors lack standing to enforce the mandatory arbitration provisions of the NASD Code of Arbitration Procedure. Even if they had, the court agrees with defendants that they do in fact have standing to enforce the NASD provisions requiring members to arbitrate disputes due to their status as intended third-party beneficiaries of Vestax's agreement to arbitrate pursuant to its voluntary membership in the NASD. *See Scobee Combs Funeral Home v. E.F. Hutton & Co.,* 711 F.Supp. 605, 607 (S.D.Fla.1989).

and that Vestax stood behind the transactions.

## STANDARD OF LAW

The question of whether arbitration is required is a question of law for the court to decide. *See Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). Section 4 of the FAA provides a federal remedy to a party seeking to compel compliance with an arbitration agreement:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. In deciding defendants' motions to compel arbitration, the court must decide whether the parties agreed to arbitrate their dispute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). In reaching this determination, federal common law counsels "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Memorial Hospital*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

## ANALYSIS

■ NASD Rule 10101 provides for the arbitration of "any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association" including disputes "between or among members and associated persons and public customers, or others." NASD Rule 10101(c). In order for the mandatory arbitration provision of Section 10101 of the NASD Code to apply here, defendants must show that they were the customers of NASD member Vestax, and that the claim arose in connection with the business of Vestax or in connection with the activities of persons associated with Vestax. *See Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir.1993) (security brokerage firm not required to arbitrate claim of customer which arose out of predecessor firm's conduct where sales and acquisition agreement expressly disavowed assumption of liability); *Gruntal & Co., Inc. v. Steinberg*, 837 F.Supp. 85 (D.N.J.1993) (same); *WMA Securities v. Ruppert*, 80 F.Supp.2d 786 (S.D.Ohio 1999) (security brokerage firm required to arbitrate claim of customer of its registered representative although customer never held account with brokerage firm and firm did not approve sale of product in dispute). NASD Rule 10301(a) further provides for the mandatory arbitration of claims "between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons."

■ While Vestax vigorously argues that none of the investors here were its "customers," within the meaning of the NASD Arbitration Code, that argument is not compelling. In the securities context, courts have construed the term "customer" within the meaning of NASD Rule 10101 and 10301(a) broadly to include not only those individuals who opened accounts with an NASD member, but those individuals who maintained an informal business relationship with a representative of an NASD member as well. *See, e.g. WMA Securities, Inc. v. Ruppert*, 80 F.Supp.2d at 789 (citing *Lehman Brothers Inc. v. Certified Reporting Co.*, 939 F.Supp. 1333, 1340 (N.D.Ill.1996); *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352 (2d Cir.1995)). In *Ruppert*, cited by defendant-investors, the district court held that a brokerage firm was required to arbitrate claims brought

**870**

against it by an investor who was allegedly swindled by two of the firm's representatives, and summarily dismissed as irrelevant the brokerage firm's arguments that the investor never opened an account with the firm and the firm did not authorize its broker to sell the securities at issue. *Id.* at 789. The court explained that "[b]y conducting business with [the brokerage firm's] registered representatives, [investors] conducted business with [the brokerage firm] and became its customers." *Id.* Finding that the investment advisors accused of misconduct were associated with the brokerage firm at the time of the alleged misrepresentations, the court found that the firm was required to arbitrate the claims under the broad mandate of NASD Rule 10301(a). The court explained Rule 10301(a), by its express terms, extended mandatory arbitration to cover claims which arose either in connection with a brokerage member's business or in connection with the activities of persons associated with such a member, in other words, with the firm's registered representatives. *Id.* Although *Ruppert* is only persuasive authority, this court finds its construction of the NASD Rules compelling. Under the legal reasoning of *Ruppert*, and based on defendants' deposition testimony in this case stating that they invested with Davis and Dunn on the belief that the dealers were acting on behalf of Vestax, mandatory arbitration of defendants' claims is required under the NASD Rules.

■ Vestax argues that since only the Archibald Living Trust and the Barbara L. Montgomery Trust signed customer agreements with Vestax, the individual claims of Archibald Montgomery and Barbara Montgomery and their holding company, Chrom Services, should be dismissed. This is the same argument rejected as irrelevant in the *Ruppert* case, discussed *supra.* Although only the trusts signed express customer agreements with Vestax, the Montgomeries and Chrom dealt with Davis and Dunn with the understanding that they were acting as Vestax advisors. Moreover, there is no dispute that all of the

Montgomery defendants are closely related. Archibald and Barbara Montgomery are the individuals who set up the trusts, are the beneficiaries of their trusts, and made all investment decisions regarding their trusts. The concept of treating a trust as a person capable of bringing suit is merely a legal fiction. In the same way that a corporation acts only through the conduct of real people acting as its employees or officers, a trust acts only through the investment decisions of natural persons who are the trust's beneficiaries or trustees. Therefore, to the extent that Barbara and Archibald Montgomery had established Vestax accounts for their living trusts, it was really Barbara and Archibald Montgomery personally who dealt with the brokerage firm on behalf of their living trusts. As the beneficiaries of their own trusts, established as part of their estate plans, they were primarily responsible for investment decisions regarding these trusts. Chrom Services (Chrom) is Archibald Montgomery's service company which acts as a holding company for his five advertising businesses. (Montgomery Defendants Exhibit E at 4–6). Archibald Montgomery uses Chrom for tax purposes and to pay his personal income only. In the same way that Archibald and Barbara Montgomery dealt with Vestax on behalf of their living trusts, they also did so on behalf of Chrom. Based on the close relationship between the Montgomeries, their holding company Chrom, and their living trusts, there is no reason to treat these defendants any differently than the two trust defendants who admittedly had opened Vestax accounts.

■ As to McWood and the two Montgomery trusts, who clearly had Vestax accounts, Vestax seeks to avoid mandatory arbitration because defendants purchased the securities in dispute through non-Vestax accounts. Vestax points out that it received no compensation for the transactions, never authorized them, and did not even know about them prior to this litigation. Vestax relies on *Wheat, First Secu-*

*rities, supra,* where the Eleventh Circuit granted the securities dealer's request for declaratory relief holding it was not obligated to arbitrate claims relating to transactions occurring with another broker-dealer. *Wheat, First Securities,* 993 F.2d at 820. The facts of this case, however, are distinguishable from those in *Wheat, First Securities.* In that case, liability was predicated on the conduct of agents employed by the brokerage firm's predecessor-in-interest where the acquisition agreement expressly disavowed any assumption of liability. By contrast, in this case, the investors dealt with Vestax's registered representatives at the time the alleged misrepresentations were made. Vestax admits that McWood and the Montgomery defendants made all of the securities transactions in controversy through Davis and Dunn at the time that these brokers were Vestax registered representatives. While Vestax vigorously contends that Davis and Dunn were not acting on behalf of Vestax at the time the alleged securities violations occurred, defendant-investors have submitted evidence showing that they believed, and that Davis and Dunn held themselves out to be, acting as Vestax agents when the securities in dispute were purchased.

McWood and the Montgomery defendants submitted affidavits in support of their motions to compel stating that they dealt with Davis and Dunn on the belief that the investment advisors were acting in their representative capacities as Vestax agents. Specifically, Montgomery testified, "[Davis] said he represented Vestax in those investments.... I thought Vestax was his company, not an affiliation. He represented them as his company." (Montgomery Defendant's Exhibit E at 96). Montgomery further stated, "I knew Jon [Davis] represented more than one company, but we felt we were always dealing with Vestax." (Montgomery Defendant's Exhibit E at 94). McWood similarly testified that when Dunn sold him on Castle Capital stock he "indicated that Vestax was behind this particular investment." (McWood Exhibit E at 31). He further testified that he believed that Dunn acted at all times in his capacity as a Vestax representative, and although he knew Dunn Financial Group existed, he "didn't have really any specific knowledge as to any differentiation between Dunn Financial and Vestax." (McWood Exhibit E at 53). McWood also testified that Davis and Dunn communicated to him that Vestax was behind RangeStar. (McWood Exhibit E at 72).

Given the undisputed fact that Davis and Dunn were Vestax representatives at the time the alleged misconduct occurred, and given defendants' testimony that Davis and Dunn held themselves out as Vestax representatives when the purchases in question were made, arbitration pursuant to NASD Rules 10101(c) and 10103(a) is mandatory. To the extent Vestax maintains that Davis and Dunn were not acting as its representatives when the alleged misconduct occurred, Vestax may proffer this defense before the NASD arbitration panel. It is only appropriate that the NASD arbitration panel, not this court, consider the defense as the investors themselves have accused Vestax of negligent supervision in the claims filed with the NASD. (McWood Exhibit F at 5–6). In addition, McWood accuses Vestax of violating NASD Rules of Fair Practice and New York Stock Exchange Rule 405 which require proper supervision of customer accounts. (McWood Exhibit F at 8–9). Under these circumstances, NASD arbitration must go forward.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that defendants' motions to compel are GRANTED. The parties are FURTHER ORDERED to ARBITRATE their claims before the NASD.

IT IS FURTHER ORDERED that these cases are DISMISSED in their entirety.