**VESTAX SECURITIES CORPORATION,**
Plaintiff,

v.

**Dean S. SKILLMAN, et al., Defendants.**
**No. 3:99CV7740.**

United States District Court,
N.D. Ohio,
Western Division.

July 27, 2000.

John W. Zeiger, Zeiger & Carpenter, Columbus, OH, for VESTAX Securities Corp.

Henry N. Heuerman, Eastman & Smith, Toledo, OH, Anthony V. Trogan, Weisman, Trogan, Young & Schloss, Birmingham, MI, for Dean S. Skillman, Dean S. Skillman, Jr., Jeffrey B. Skillman, Skillman Family Reunion Fund, Inc., Corporate Brewing Co., Karen Mulholland.

Henry N. Heuerman, Eastman & Smith, Toledo, OH, for B & A Trading Co.

## ORDER

CARR, District Judge.

This is a declaratory judgment action in which Plaintiff VESTAX Securities Corporation seeks a declaration of "no liability" against Defendants Dean S. Skillman, Dean S. Skillman, Jr., Jeffrey B. Skillman, B & A Trading Co., The Skillman Family Reunion Fund Inc., Corporate Brewing Company, and Karen Mulholland. Pending are defendants' motion to compel arbitration (Doc. 17), and plaintiff's motion to strike defendants' motion to compel arbitration (Doc. 21). For the following reasons, defendants' motion to compel shall be granted, and plaintiff's motion to strike shall be denied.

## BACKGROUND

Plaintiff is registered with the National Association of Securities Dealer, Inc. (NASD) as a broker-dealer and is engaged in the business of conducting security transactions on behalf of its customers through its NASD registered representatives. (*See* Declaration of R. Jack Conley at ¶¶ 2–3). Plaintiff's approximately 625 registered representatives are all independent contractors who have agreed to conduct trades only in securities authorized and approved by plaintiff. (*Id.* at ¶¶ 3–4).

Jon Davis was one of plaintiff's registered representatives from July 1990 to the time of his death in the fall of 1998. Mr. Davis owned and operated a company by the name of Strategic Capital Consulting which provided investment advice to clients. Plaintiff had no interest in Strategic Capital Consulting.

Defendants were customers of Mr. Davis and claim that he promoted and marketed numerous securities to them as a registered representative of plaintiff. Based on Mr. Davis's representations, defendants contend that they purchased the recommended securities. Defendants, however, made these purchases through brokerage firms other than plaintiff and, indeed, never opened accounts with plaintiff. According to defendants, they purchased the securities in this manner because Mr. Davis advised them to do so. Defendants insist, however, that at all times they viewed Mr. Davis as a representative of plaintiff.

In July 1999, after Mr. Davis's death, defendants' attorney sent a letter to plaintiff claiming that Mr. Davis, as a registered agent of plaintiff, committed various security violations and demanding $500,000 in compensation. In response, plaintiff commenced an internal investigation and determined that 1) defendants did not have customer accounts with plaintiff; 2) plaintiff did not execute the transactions at

issue; and 3) plaintiff did not receive any commissions from the transactions at issue. Plaintiff, therefore, filed the instant action seeking a declaration of non-liability.

Subsequently, defendants filed an arbitration claim with NASD. In their arbitration claim, defendants allege that they invested in certain securities on the basis of misrepresentations made by plaintiff's registered representative, Mr. Davis. (Doc. 17, Ex. A. at 2–6). Defendants assert, *inter alia,* that plaintiff negligently violated NASD rules governing the supervision of registered agents by broker-dealers. (*Id.* at 7–9).

Defendants now move to dismiss and compel arbitration on the ground that plaintiff is required by NASD Rule 10301 to arbitrate disputes with its customers to the extent that those disputes arise from plaintiff's business or the activities of persons associated with plaintiff. Defendants contend that they were customers of plaintiff and that their dispute arises from plaintiff's business and the activities of Mr. Davis while he was plaintiff's registered agent.

Plaintiff opposes defendants' motion to compel arbitration and moves to strike it from consideration. Plaintiff insists that defendants were not its customers and that it has not agreed to arbitrate defendants' claims. Absent an agreement to arbitrate, plaintiff maintains, it is not required and cannot be compelled to arbitrate defendants' claims.

## DISCUSSION

 It is well-established that federal policy favors enforcing valid agreements to arbitrate disputes. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, once a court determines that a valid agreement to arbitrate exists, all other issues concerning the dispute must be reserved to the arbitration forum. *See Ferro Corp. v. Garrison Industries,* 142 F.3d 926, 933 (6th Cir.1998)

(*citing Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)); *see also Medika International, Inc. v. Scanlan International, Inc.,* 830 F.Supp. 81, 87 (D.P.R.1993) ("Having found the arbitration clause to be valid, we refer all [other] issues arising from the parties' relationship ... to the arbitrator.").

 Moreover, while the issue of the existence of a valid agreement to arbitrate is properly resolved by the federal court, issues related to the scope of that agreement are not. *See Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. 927. Thus, the issue here is whether plaintiff agreed to arbitrate this dispute with defendants.

Subsection (a) of NASD Rule 10301 requires disputes between a NASD member and its customers to be resolved through arbitration if they are related to the business of the member or the activities of its associated persons:

> Any dispute, claim, or controversy ... between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code ... upon the demand of the customer.

Plaintiff does not deny that, pursuant to NASD Rule 10301(a), it has agreed to arbitrate disputes, claims, or controversies with its customers. Rather, plaintiff argues that defendants were not its customers and that the disputes embodied in defendants' arbitration claims did not arise from its business.

### 1. Were Defendants Customers of Plaintiff?

 Plaintiff asks this Court to restrict the term "customer" in NASD Rule 10301(a) to persons who had accounts with plaintiff, thereby excluding persons who

discussed investment possibilities with plaintiff's registered representatives but did not open accounts with plaintiff.

Defendants, meanwhile, argue that although they never opened accounts with plaintiff, they dealt extensively with Mr. Davis, who was plaintiff's registered representative at the time he made the alleged misrepresentations. Thus, defendants contend that their relationship with Mr. Davis while he was plaintiff's registered representative makes them "customers" for the purposes of NASD Rule 10301(a). I agree.

The United States District Court for the Southern District of Ohio, in a case virtually identical to this case, specifically held that persons who discuss investment possibilities with a registered representative of a NASD member but do not open accounts with the NASD member are "customers" under NASD Rule 10301(a). *WMA Securities, Inc. v. Ruppert*, 80 F.Supp.2d 786, 789 (S.D.Ohio 1999) ("By conducting business with Plaintiff's registered representatives, Defendants conducted business with Plaintiff and became its customers").

Moreover, while applying New York Stock Exchange Rule 600(a), which is analogous in all pertinent respects to NASD Rule 10301(a), the United States District Court for the Northern District of Illinois similarly concluded that:

> Defining customers to include not only those who executed purchases with member firms, but also those who maintained a less formal business relationship at the time of the alleged misconduct, ... recognizes market reality.

*Lehman Brothers, Inc. v. Certified Reporting Co.*, 939 F.Supp. 1333, 1340 (N.D.Ill. 1996); *see also Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 357 (2nd Cir.1995) (investors defrauded by a representative of a NASD member firm, but who never opened accounts with that firm, were, nonetheless, customers).

Here, defendants dealt with a registered representative of plaintiff. The evidence further establishes that defendants knew that Mr. Davis was associated with plaintiff at the time of the alleged misrepresentations that give rise to defendants' arbitration claims. The fact that defendants never opened accounts with plaintiff is irrelevant. By conducting business with plaintiff's registered representative, defendants conducted business with plaintiff and became its customers. *WMA Securities Inc.*, 80 F.Supp.2d at 789.

### 2. Do Defendants' Claims Arise in Connection with the Business of Plaintiff?

▇ Plaintiff additionally argues that it is not required to arbitrate the claims asserted by defendants, even if defendants were its customers, because their claims do not arise in connection with the business of plaintiff as required by NASD Rule 10301(a). In particular, plaintiff argues that it 1) played no role in the purchase or sale of the subject securities, and 2) received no compensation for any of the transactions. I disagree.

First, plaintiff ignores the second part of NASD Rule 10301(a), which when examined fully requires that the claim arise *either* in connection with plaintiff's business or *in connection with the activities of persons associated with plaintiff.* Defendants' claims clearly are connected with the activities of persons associated with plaintiff. Indeed, plaintiff does not deny that Mr. Davis was, at the time he made the alleged misrepresentations, an associated person for purposes of the rule. Nor does plaintiff deny that defendants' arbitration claims arise in connection with the activities of Mr. Davis while he was associated with plaintiff.

Second, defendants' claims against plaintiff are based in part on plaintiff's alleged failure to effectively supervise its registered representative, Mr. Davis. The fact that plaintiff received no compensation for the transactions at issue is insignificant because plaintiff's business includes the supervision of its large corps of registered

representatives. Because defendants' claims arise in connection with the supervision of one of those representatives, they arise in connection with plaintiff' business. *WMA Securities, Inc.*, 80 F.Supp.2d at 790; *see also Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 85 F.3d 21, 29 (2nd Cir.) (applying analogous New York Stock Exchange rules), *cert. denied*, 519 U.S. 1040, 117 S.Ct. 609, 136 L.Ed.2d 534 (1996).

Defendants' claims, as they are stated, arise in part from plaintiff's alleged failure to supervise its registered representative and from the resulting misrepresentations upon which defendants allegedly relied to their detriment. Those claims are related both to plaintiff's business and to the activities of its registered representatives and, therefore, are subject to arbitration pursuant to NASD Rule 10301(a). *WMA Securities, Inc.*, 80 F.Supp.2d at 790–791. Accordingly, I shall grant defendants' motion to compel arbitration and deny plaintiff's motion to strike.

### CONCLUSION

It is, therefore,

ORDERED THAT

1. Defendants' motion to compel arbitration is granted; and

2. Plaintiff's motion to strike defendants' motion to compel arbitration is denied.

So ordered.