OPINION OF THE COURT
Bruce Allen, J.
Respondents have filed claims for National Association of Securities Dealers (NASD) arbitration against petitioner Financial Network Investment Corporation (FNIC). In this proceeding, FNIC seeks a permanent stay of;the arbitration.
*298 In 1998, a group of FNIC registered representatives were operating a branch of FNIC in Depaw, New York, that did business under the name of Justin Financial Services, Inc. (JFS). Apparently, there were employees of JFS working in the same office who were not registered representatives of FNIC.
The arbitration claims allege that each of the respondents suffered losses as a result of their investment in fraudulent, nonregistered securities of a company called ETS. They further allege that they purchased the securities through the Depaw office and at the recommendation of individuals who represented themselves to be FNIC brokers. Respondents allege that the misrepresentations of the brokers are attributable to FNIC under a theory of respondeat superior and that FNIC is also liable for failure to properly supervise its representatives.
Petitioner contends that the respondents did not make the ETS investments as customers of FNIC. It points to a letter dated December 12, 1998 in which FNIC denied JFS permission to sell the ETS product as an outside sales activity.
Six of the respondents — Bevaliacqua, Gawronski, Guglietta, Kennedy, Guido Marzano and Jeanette Marzano — had written customer agreements with FNIC. The agreements contained an arbitration clause providing that: “Any controversy between you and us shall be submitted to arbitration before the New York Stock Exchange, Inc., any other national securities exchange in which a transaction giving rise to the claim took place (and only before such exchange), or the National Association of Securities Dealers, Inc.”
When a valid arbitration agreement covering the dispute at issue is shown, arbitration is required. (Matter of Prinze [Jonas], 38 NY2d 570.) Moreover, given the broad language of the arbitration clause and the policy favoring arbitration, any doubts concerning the scope of arbitrable issues should be resolved in favor of coverage. (Moses H. Cone Mem. Hosp. v Mercury Constr. Corp., 460 US 1; Matter of Silverman [Benmor Coats], 61 NY2d 299; Matter of MML Invs. Servs. [Pittman Co., Inc. Pension Fund], 210 AD2d 868 [3d Dept 1994].) Respondents’ claims against FNIC clearly appear to fall within the category of “any dispute between you and us.” Petitioner’s contention that FNIC was not responsible for the sale of ETS may be a defense to respondents’ claims. However, in determining arbitrability, a court is not to consider the merits of the claim, but only whether there is a reasonable relationship between the subject matter of the arbitration agreement and the subject matter of the dispute between the parties. (Matter of *299 Marks v Prisant, 171 AD2d 665 [2d Dept 1991].) Petitioner contends that this matter was beyond the scope of the agreement because the ETS investment was not technically a “security.” However, petitioner has not pointed to any language in the agreement, or in NASD regulations, which limits arbitration to matters involving “securities.” Absent such a specific limitation, the broad arbitration clause must be enforced. (New York City Tr. Auth. v Amalgamated Tr. Union, 284 AD2d 468 [2d Dept 2001].)
The remaining respondents, who did not have written customer agreements with FNIC, contend that arbitration is compelled under NASD regulations. It is not disputed that FNIC is an NASD member, that it had signed a U-4 form, and that it was covered by the organization’s regulations concerning mandatory arbitration. NASD rule 10301 (a) requires arbitration of any dispute between a customer and a member “and/or associated person arising in connection with the business of such member or in connection with the activities of such associated person * * * .” The definition of “associated person” in NASD bylaws includes “any natural person in the securities business who is directly or indirectly controlled by such member.” The registered representatives in the FNIC branch would clearly qualify as “associated persons.”
In John Hancock Life Ins. Co. v Wilson (254 F3d 48 [2d Cir 2001]), respondent’s claims were based on the alleged sale of fraudulent securities by a registered representative of John Hancock. There was no allegation that John Hancock was involved in the transaction or that the representative indicated to respondent that he was acting on behalf of John Hancock. The Second Circuit held that the respondent, as the customer of an associated person, could demand John Hancock to arbitrate under rule 10301.
In WMA Sec. v Ruppert (80 F Supp 2d 786 [SD Ohio 1999]), the seller of the securities in question was a registered representative of the plaintiff and was known by the defendant to be associated with the plaintiff. The court held that the defendant could compel the plaintiff to arbitrate even though defendant never had an account with the plaintiff and the plaintiff never approved any sale of the securities.
Here, as noted above, the respondents have each affirmed that they purchased the ETS products through the FNIC branch office, on the recommendation of named representatives of FNIC, who represented to respondents that they were acting *300 on behalf of FNIC. Further, and contrary to petitioner’s arguments, for purposes of this proceeding those allegations have not been refuted. The evidence proifered by petitioner — the correspondence between FNIC and JFS and the fact that the named brokers of record on the ETS sales were the spouses of FNIC’s registered representatives — only lends credence to respondents’ claims. On these facts, it is clear that rule 10301 would apply.
Accordingly, the motion to stay arbitration is denied, and the matter shall proceed to arbitration.